IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GERALD JAMES FRALICK,<br><br>Plaintiff,<br><br>v.<br><br>HENRY DAY FORD,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:12-cv-1210-EJF<br><br>Magistrate Judge Evelyn J. Furse |

On December 28, 2012, Gerald Fralick filed his Complaint against Henry Day Ford ("HDF") alleging claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213. (ECF No. 2.) HDF moves this Court[1] under Federal Rule of Civil Procedure 56 for summary judgment on all of Mr. Fralick's claims. The Court has carefully read the Motion and related Memoranda and held a hearing on April 24, 2014. Because the accommodations Mr. Fralick sought do not qualify as reasonable and because he does not meet the requirements of a qualified individual with a disability under the ADA, the Court GRANTS HDF's Motion for Summary Judgment (ECF No. 32).

## LEGAL STANDARD

Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court must "view

---

[1] The parties consented to the exercise of jurisdiction by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). (ECF No. 11.)

the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).

## FACTUAL BACKGROUND[2]

Mr. Fralick received a diagnosis of Multiple Sclerosis ("MS") in 2008. (Fact 1, ECF No. 34.) His MS symptoms included headaches, fatigue, loss of balance, dizziness, cognitive disorders, vision issues, muscle spasms, and muscle cramps. (Fralick Dep. 36:18–37:9, ECF No. 32-1.) Shortly after learning of his MS diagnosis, Mr. Fralick voluntarily terminated his employment with HDF to focus on his health. (Fact 1, ECF No. 34.) After enjoying a period of stable symptom management from January 2008 to August 2009, Mr. Fralick returned to HDF as a finance manager, a position he had held during his previous stint with HDF. (Facts 2, 4, 5, ECF Nos. 34 & 35.) Although HDF typically employs two finance managers at a time, Mr. Fralick knew he would serve as the only finance manager for at least a period of time. (Facts 5, 9, ECF No. 35.)

The parties do not dispute the essential functions of the finance manager position, which include:

- arranging financing for customers, including working with customers and lenders after the customer agrees to a purchase;
- receiving funding from lending institutions within fourteen days, which requires the finance manager to submit paperwork to the lenders;

---

[2] The Court recites the below facts from the parties' briefs and exhibits, considering the evidence and making all reasonable inferences in the light most favorable to Mr. Fralick.

- selling additional products to customers, including theft recovery products, life and disability insurance, gap insurance coverage, extended warranties or vehicle service contracts, chemical products, and accessories;
- attendance at the dealership during business hours in shifts scheduled from 8:30 a.m. to 6:00 p.m. or 11:00 a.m. to 9:00 or 10:00 p.m.;
- one "burn day" a week during which one finance manager works from opening to closing to allow the other finance manager a day off but assuring a finance manager is always present;
- fifty hours of scheduled work per week, requiring sixty hours of actual work;
- attendance at weekly management meetings held on Friday mornings.

(Facts 12–14, 17–25, ECF No. 34.)

When he began his second stint at HDF, Mr. Fralick knew stress and fatigue could exacerbate his MS symptoms but believed his health could withstand sixty-hour work weeks indefinitely. (Facts 7, 55, ECF No. 34.) However, in December 2009, Mr. Fralick felt the finance manager position, as he performed it, might negatively affect his symptoms. (Fact 57, ECF No. 34.) In January 2010, Mr. Fralick formally requested that HDF hire a second finance manager. (Fact 58, ECF No. 35.) From January 2010 and continuing on a weekly basis thereafter, Mr. Fralick also requested HDF permit him to work forty-hour weeks once HDF hired the second finance manager rather than the sixty-hour weeks the finance manager position requires. (Fralick Dep. 65:21–66:23, 89:12–20, 91:20–24, 129:2–10, 131:9–15, ECF No. 32-1.)

Sales Managers Bryant Gibby and Jason Volny—the finance managers before Mr. Fralick's return to HDF—provided some assistance prior to HDF hiring a second finance manager. (Fact 60, ECF No. 35.) HDF, according to Mr. Fralick, also hired Chris Marshall to

help as finance manager on a temporary basis for two weeks in February 2010. (Facts 66–67, ECF No. 35.)

On April 16, 2010, HDF hired Paul St. Clair as a second finance manager. (Fact 68, ECF No. 34.) HDF did not reduce Mr. Fralick's required work week from sixty to forty hours. (Fralick Dep. 94:23–95:2, ECF No. 35-2.) Before Mr. St. Clair started, HDF moved Mr. Fralick to a smaller office. (Fact 71, ECF No. 35.) The air conditioning in this new office did not work when Mr. Fralick moved in, but HDF fixed it within approximately thirty days. (Facts 71–72, ECF No. 35; Fralick Dep. 129:15–130:14, ECF No. 34-1.) After fixing the air conditioning, HDF painted Mr. Fralick's office. (Fact 73, ECF No. 35.) The project took approximately one week. (Fact 74, ECF No. 35.) The lack of climate control and the paint fumes exacerbated Mr. Fralick's symptoms. (Fralick Dep. 130:21–22, ECF No. 32-1.) Prior to the air conditioning and painting issues, Mr. Fralick asked to park closer to his office because his MS made walking difficult and made him sensitive to changes in temperature. (Fact 69, ECF No. 34.) The employee parking area in which HDF required Mr. Fralick to park forced him to walk several hundred feet from his car to HDF's building; ice and snow frequently covered the path during that winter; and Mr. Fralick frequently fell down during this walk. (Fralick Dep. 110:9–19, 111:3–4, ECF No. 32-1.) Although HDF initially denied Mr. Fralick's parking-relocation request, HDF ultimately relented and no longer required Mr. Fralick to park in the employee lot. (Fact 70, ECF No. 35.) Mr. Fralick's symptoms worsened between January and August 2010. (Fact 75, ECF No. 35; Fralick Dep. 145:24–148:8, ECF No. 35-2.)

The parties dispute how well Mr. Fralick performed his position of finance manager during his time in that position from 2009 to 2010. Mr. Fralick testified that by August 2010, his MS had progressed to the point where he could no longer perform his job. (Fralick Dep. 146:14–

21, 148:8, 162:15–163:2, ECF No. 35-2.) In August 2010, Mr. Fralick spoke with HDF's General Manager, Jeremy Day. (Fact 84, ECF No. 35.) During this conversation, HDF terminated Mr. Fralick's employment as a finance manager with HDF. (*Id.*) Mr. Day met with Mr. Fralick the next day and said concerns about Mr. Fralick's health—and the potential for missed work related to Mr. Fralick's health—prompted the decision to terminate his employment. (*Id.*) Subsequently, Mr. Fralick requested a position on the sales floor, which HDF consented to, until Mr. Fralick terminated his employment on November 1, 2010, because he could not perform the physical demands of a salesperson. (Facts 84–87, 89, ECF Nos. 34 & 35.) By this time, Mr. Fralick's health no longer permitted him to work sixty-hour work weeks, and he thereafter applied for Social Security disability benefits and benefits under a long-term disability insurance policy. (Facts 90–93, ECF No. 34; Fralick Dep. 146:14–21, 148:8, 162:15–163:2, ECF No. 35-2.)

## ANALYSIS

### A. Failure to Accommodate

Mr. Fralick claims HDF unlawfully discriminated against him by failing to accommodate his MS. The ADA's definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA thus creates a cause of action for an employer's failure to accommodate a disabled employee. *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001). "However, an employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee

requested." *Id.* (citing 29 C.F.R. § 1630.2(p)(1)). Employers enjoy "broad discretion in determining which alternative accommodation should be provided." *Id.* (citing 29 C.F.R. § 1630.9).

A prima facie case for failure to accommodate under the ADA requires the plaintiff to prove "'(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . .; and (4) that the [employer] refused to make such accommodations.'" *Spielman v. Blue Cross & Blue Shield of Kan., Inc.*, 33 F. App'x 439, 443 (10th Cir. 2002) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)) (alterations in original); *see also Bones v. Honeywell Int'l, Inc.*, 223 F. Supp. 2d 1203, 1218 (D. Kan. 2002) (citing *Spielman*, 33 F. App'x at 443), *aff'd*, 366 F.3d 869 (10th Cir. 2004).

The parties do not dispute that Mr. Fralick has a disability under the ADA and that HDF knew of Mr. Fralick's MS diagnosis when Jeremy Day rehired Mr. Fralick in August 2009. (Fact 81, ECF No. 34.) The parties do dispute whether, with reasonable accommodations, Mr. Fralick could perform the essential functions of the finance manager position. To survive this summary judgment motion, Mr. Fralick must show a disputed issue of material fact exists with respect to this third prong.

The undisputed facts show Mr. Fralick requested the following primary accommodations: (1) that HDF hire a second finance manager to ease his workload, and (2) that HDF permit him to work only forty hours per week. (Fact 58, ECF No. 35; Fralick Dep. 90:10–16, ECF No. 32-1.) HDF hired a second finance manager in April 2010 but never allowed Mr. Fralick to reduce his hours. (Fact 68, ECF No. 34, Fralick Dep. 94:23–95:2, ECF No. 35-2.)

The Tenth Circuit has "consistently held . . . that an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004) (citation omitted). Mr. Fralick does not dispute that working sixty hours per week constitutes an essential function of the finance manager position he held at HDF. (Fact 24, ECF No. 34; *see also* Facts 11–26, ECF No. 34.) However, Mr. Fralick argues in his Opposition Memorandum that he did not request reduced hours. (Opp'n Mem. 46–47, ECF No. 34.) Instead, Mr. Fralick argues HDF responded to his request for a second finance manager by offering to make the additional hire on the condition Mr. Fralick accept reduced hours and pay. (*Id.* at 46.) Even assuming HDF did suggest this accommodation first, Mr. Fralick's deposition testimony shows he made repeated requests for a reduction in hours and could no longer sustain a sixty-hour-per-week schedule. For example:

> Q. So in January you go in and talk to Jeremy.
>
> A. Yes.
>
> Q. All right. Was this in conjunction with your evaluation, or was this a separate meeting?
>
> A. When I say separate meetings, I would talk to him on a weekly basis. I had started to let him know toward the end of December that it was kind of starting to affect me. But in January — and Jeremy and I talked every day. And it was — starting in January at least once a week in our conversations, I would say Jer, there's things that need to change. I need some help. It's got to be cut back.
>
> And so it was proposed to him on a weekly basis. It was actually the middle of April before he finally brought someone on board. So I would talk to him easily weekly, sometimes more than a week, for three and a half months.
>
> Q. And so on a weekly basis, is this — as you're saying this, it sounds to me that this is kind of casual interactions. Is this you going —

> A. There were casual times he would come into my office, how you doing. And I'd say, Jer, I'm struggling. I need some help. There were times — two or three times a month I would officially go into his office and make it a point to say, Jeremy, something has got to change. It's affecting my health. I need help. *I need reduction of hours*. I need to — fatigue and stress were huge factors. And I said it's time. It's past time to have someone come in and help me so that I can go to a normal work week.

(Fralick Dep. 65:21–66:23, ECF No. 32-1 (emphasis added).)

> Q. So given that combination, how many hours in January and then advancing through April, what do you think you could have — how many hours could you have worked without aggravating your symptoms?
>
> A. When I got into January and started making requests for Jeremy, I had been 60 hours a week. I told Jeremy I would never go part time, *but I made a request to go down to 40 hours a week*. I felt like a full-time 40-hour week job would be ample. . . .

(*Id.* at 89:12–20 (emphasis added).)

Mr. Fralick continued to request a reduction in hours after Paul St. Clair finished training with Mr. Fralick and began actively helping with finance manager duties in May and June 2010.

> Q. Now I want to make a list of May until you leave the company. I want to know all the requests that you made to Jeremy Day or whoever else.
>
> A. Okay.
>
> Q. So –
>
> A. As far as continuing the old ones, the request where he had told me I could go to 40 hours a week with a cut in pay, I continued to request for.

(*Id.* at 129:2–10.)

Mr. Fralick's own deposition testimony shows he requested HDF reduce his weekly hours from sixty to forty. Mr. Fralick's counsel stated at oral argument that he considered a forty-hour work week a reasonable accommodation while reiterating that HDF suggested that accommodation. Thus, insufficient evidence exists from which a jury could conclude that Mr. Fralick did not seek, and in fact need, a forty-hour work week as an accommodation. This

requested hours reduction does not qualify as a reasonable accommodation since Mr. Fralick admits a sixty-hour work week constitutes an essential function of the finance manager position. Mr. Fralick thus fails to meet his burden to "first demonstrate that [the] accommodation appears reasonable on its face." *See Mason*, 357 F.3d at 1122 (citations omitted).

To the extent Mr. Fralick argues this Court should hold HDF to its offer of reduced pay for reduced hours, the ADA simply does not require an employer to accommodate an employee by eliminating an essential function or creating a new position.[3] *See, e.g.*, *Mason*, 357 F.3d at 1122–23 (citation omitted) (holding that an accommodation that eliminates an essential function does not qualify as reasonable and citing cases); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174–75 (10th Cir. 1999) (en banc) (holding that employers need not create a new position to accommodate an employee). HDF did not concede the reasonableness of a forty-hour week as an accommodation by offering as much to Mr. Fralick. *See E.E.O.C. v. TriCore Reference Labs.*, 493 F. App'x 955, 960 n.7 (10th Cir. 2012) (recognizing an employer does not concede the reasonableness of an accommodation when it "bends over backwards to accommodate a disabled worker" (quoting *Terrell v. USAir*, 132 F.3d 621, 626 n.6 (11th Cir. 1998))).

Mr. Fralick made other minor accommodation requests of HDF, including that HDF permit him to park closer to his office, that HDF fix his office's air conditioning, and that HDF allow him to use another office while it painted his. (Facts 69, 71, 73, ECF Nos. 34 & 35.) Mr. Fralick argues HDF's delay in responding to these requests violates the ADA. (Opp'n Mem. 48–49, ECF No. 34.) An employer's delay in providing an accommodation may violate the ADA. *See Selenke*, 248 F.3d at 1262–63 (citations omitted). However, by Mr. Fralick's own testimony, without the reduced-hours accommodation none of these accommodations would have permitted

---

[3] Mr. Fralick asserts no contract claim in his Complaint. Thus, the Court does not analyze whether the parties' discussion created an enforceable contract.

Mr. Fralick to perform one of the essential functions of his position—the sixty-hour work week—after August 2010 as a prima facie case requires. (*See* Fralick Dep. 146:14–21, 148:8, 162:15–163:2, ECF No. 35-2); *see also Spielman*, 33 F. App'x at 443 (requiring as part of prima facie case "that with reasonable accommodation he could perform the essential functions of the position"). Further, Mr. Fralick apparently did not consider these additional accommodations necessary, describing them as "trivial" in his deposition. (Fralick Dep. 184:10–12, ECF No. 35-2.) While these actions may present evidence of discrimination as argued by Mr. Fralick, they do not provide sufficient evidence for Mr. Fralick to survive summary judgment on his reasonable accommodation claim.

Mr. Fralick fails to demonstrate a prima facie case for failure to accommodate. The Court therefore grants summary judgment against his claim for failure to accommodate.

### B. Discrimination

Mr. Fralick also alleges HDF discriminated against him on the basis of his MS, firing him from the finance manager position and eventually forcing him to leave the company. A prima facie case of disability discrimination under the ADA requires a plaintiff to show: "(1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered discrimination on the basis of her disability." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261 (10th Cir. 2009) (citation omitted).

HDF does not challenge that Mr. Fralick meets the definition of "disabled" under the ADA. Instead, HDF argues Mr. Fralick does not constitute a "qualified individual." (*See* Mot. for Summ. J. 22–37, ECF No. 32.) Mr. Fralick "bears the burden of showing that [he] is able to

perform the essential functions of [his] job, with or without reasonable accommodation."
*Hennagir*, 587 F.3d at 1262 (citations omitted).

The Tenth Circuit has "endorsed a two-part analysis to determine whether a person is qualified under the ADA." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003) (citation omitted).

> First, the court determines whether the individual can perform the essential functions of the job. Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable him to perform those functions.

*Id.* (internal citations omitted); *see also* 42 U.S.C. § 12111(8) (defining "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires").

The parties do not dispute that working sixty hours per week constitutes an essential function of the finance manager position Mr. Fralick held. (Fact 24, ECF No. 34; *see also* Facts 11–26, ECF No. 34.) By August 2010, Mr. Fralick admits in his deposition he could no longer perform all of the finance manager position's essential functions, specifically, the sixty-hour-week requirement. (Fralick Dep. 146:14–21, 148:8, 162:15–163:2, ECF No. 35-2.) Thus, sufficient evidence does not exist from which a jury could conclude that Mr. Fralick could have continued in the finance manager position past August 2010 without an accommodation permitting him to work forty hours instead of sixty hours each week. The Court must therefore determine whether Mr. Fralick has demonstrated a genuine issue of fact regarding his ability to perform the essential functions with reasonable accommodation.

This analysis overlaps with Mr. Fralick's failure-to-accommodate claim. Mr. Fralick, after HDF's initial suggestion, proposed HDF permit him to work forty-hour weeks as an

accommodation for his inability to work sixty-hour weeks. (Fralick Dep. 65:21–66:23, 89:12–20, 91:20–24, 129:2–10, ECF No. 35-2.) But because a sixty-hour work week comprises an essential function of the finance manager position, a forty-hour week "is not, as a matter of law, a reasonable or even plausible accommodation." *Mason*, 357 F.3d at 1122 (citations omitted).

The Tenth Circuit reached the same result in a case presenting similar facts, *Milton v. Scrivner, Inc.*, 53 F.3d 1118 (10th Cir. 1995). The plaintiffs in *Milton* both worked as grocery selectors in defendant Scrivner's grocery warehouse. 53 F.3d at 1120. The selector job "basically amount[s] to moving items from point A to point B and can involve episodes of heavy lifting." *Id.* at 1123–24. Both the district court and Tenth Circuit found Scrivner's new, faster production standards qualified as essential elements of the selector job. *Id.* at 1124. Both plaintiffs suffered on-the-job injuries and could not keep pace with these standards. *Id.* at 1120. The plaintiffs proposed, among other accommodations, "an altered or reduced production standard for them, [or] the designation of a lighter work load." *Id.* at 1124. The Tenth Circuit held that "[a]ltering or reducing defendant's production standards or allowing plaintiffs to move only the lighter loads is more accommodation than is reasonable for this defendant." *Id.* In reaching this conclusion, the Tenth Circuit noted

> An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job. *See* 29 C.F.R. Pt. 1630 App. § 1630.2(*o*); *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir. 1991). An accommodation that would result in other employees having to worker [*sic*] harder or longer hours is not required. *See* 29 C.F.R. § 1630.2(p)(2)(v) (impact to other employees on their ability to do their duties is a relevant factor in determining the reasonableness of an accommodation). Slowing the production schedule or assigning plaintiffs lighter loads would fundamentally alter the nature of defendant's warehouse operation, a change not demanded by the law. *See* 29 C.F.R. Pt. 1630 App. § 1630.2(p).

*Id.* at 1124–25. Mr. Fralick's request to work fewer than sixty hours per week would likewise "result in other employees having to worker [*sic*] harder or longer hours" and "fundamentally

alter the nature of" the finance manager position. *See id.* at 1125. That request therefore does not constitute a reasonable accommodation, and Mr. Fralick thus does not meet the definition of a "qualified individual" under the ADA.

Mr. Fralick asserts that because he has supplied direct evidence of discrimination his case should survive summary judgment. While Mr. Fralick's direct evidence obviates the need to engage in the *McDonnell Douglas* burden shifting analysis, it does not eliminate the need to determine whether sufficient evidence exists for a jury to conclude Mr. Fralick constitutes a qualified individual. *Davidson*, 337 F.3d at 1189. "[T]o be entitled to the protection of the ADA, plaintiffs are required to demonstrate that they are 'qualified person[s] with a disability.'" *Milton*, 53 F.3d at 1125 (quoting *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995)). As set forth above, Mr. Fralick does not meet this requirement. The Court therefore grants summary judgment against Mr. Fralick's disability discrimination claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 32).

DATED this 8th day of May, 2014.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge